Leo **HEIDEMAN**, et ux., Plaintiffs,

v.

**PFL, INC., Defendant.**

**No. 88–0010–CV–W–JWO.**

United States District Court,
W.D. Missouri, W.D.

April 11, 1989.

Mark J. Klein, Dennis E. Egan, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, Mo., for plaintiffs.

John F. Wymer, Paul T. Stagliano, John R. Phillips, Paul, Hastings, Janofsky & Walker, Atlanta, Ga., John R. Phillips, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDERS ON MOTION FOR SUMMARY JUDGMENT

JOHN W. OLIVER, Senior District Judge.

### I

The above-captioned case pends on defendant's motion for summary judgment in which the defendant asserts that all five counts [1] of plaintiffs' complaint are barred by the applicable statute of limitations. Plaintiffs maintain that "[t]here are no statute of limitations issues in the instant litigation that properly may be resolved by summary judgment. Defendant has not carried its burden of showing that no genuine issue exists as to any material fact; to the contrary, plaintiffs have indicated the existence of substantial issues as to material facts on each of their causes of action." Plts' Memo in Oppos. to Deft's Motion for S.J. on Stat. of Limit. Issues at 12.

Pursuant to discussion at a pretrial conference held August 31, 1988, the parties agreed and the Court approved that the statute of limitations issues presented in defendant's pending motion for summary judgment should be separated for determination pursuant to Rule 42(b) of the Feder-

---

1. Count I alleges a violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (ADEA); Count II alleges a violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* (ERISA); Count III alleges fraudulent inducement to accept transfer to Memphis; Count IV alleges intentional infliction of emotional distress; and Count V alleges loss of consortium by Mrs. Heideman.

al Rules of Civil Procedure. An order to that effect was entered on August 31, 1988 and an agreed schedule of briefs for the presentation of the statute of limitations issues to this Court for resolution was established. The parties were also able to agree upon a partial stipulation of facts which was filed together with both parties' reports of facts each considered material to the statute of limitation issues to which the other was unwilling to stipulate.

This Court has reviewed those stipulations, defendant's motion for summary judgment, plaintiffs' opposition to defendant's motion for summary judgment, both defendant and plaintiffs' reports on the statute of limitation issues and defendant's reply brief together with all depositions and exhibits submitted.[2]

We find and conclude that neither the principles of equitable estoppel nor equitable tolling can be said to toll the statute of limitation applicable to either plaintiffs' ADEA claim or to plaintiffs' ERISA claim. We further find and conclude that all three remaining State common law claims are also barred by the applicable statute of limitations. PLF's motion for summary judgment on Count I (ADEA claim), Count II (ERISA claim), and the three State claims (Counts III, IV, and V) will be granted because the charge for each count was not timely filed for the reasons set out below.[3]

## II

### Standard for Summary Judgment

The Supreme Court has recently decided three summary judgment cases, *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This trilogy of cases clearly advocates a more liberal use of summary judgment. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555, quoting Fed.R.Civ.P. 1. *See also City of Mt. Pleasant v. Associated Electric Corp., Inc.*, 838 F.2d 268, 273 (8th Cir.1988) ("[A] trilogy of recent Supreme Court opinions demonstrates that [the Eighth Circuit] should be somewhat more hospitable to summary judgments than in the past. The motion for summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact.").

The purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *See* Advisory Committee Notes to Rule 56. Summary judgment "must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, an-

**2.** This includes the plaintiffs' supplementary affidavit filed February 8, 1989, defendant's reply to plaintiffs' supplementary affidavit filed February 21, 1989, and plaintiffs' reply to defendant's reply filed February 23, 1989.

**3.** Both parties recognized that a decision in favor of the defendant on the statute of limitation issue would produce a harsh result. For there can be no doubt that if plaintiff had not slept on his rights and had moved with greater dispatch to pursue the true reason for his firing before the statute of limitations had run, plaintiff would have had an open and shut case of age discrimination. However, principles stated in *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196 (1984), and in *Mohasco Corp. v. Silver*, 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980), foreclose the determination of statute of limitation questions on the basis of sympathy.

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552–53.[4]

The Supreme Court has made clear that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'[5] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. "Rule 56(e) [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

The nonmoving party cannot merely rest upon allegations and denials in his pleadings to get to the jury without any meaningful probative evidence that tends to support his complaint. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 citing *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). A genuine issue of material fact exists, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Where the

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 citing *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

It must be emphasized, however, that nothing in these most recent Supreme Court cases cited above negates the rule of law mandated by earlier cases that in ruling on a motion for summary judgment, it is the court's duty to view the facts in the light most favorable to the nonmoving party and to allow that party the benefit of all reasonable inferences to be drawn from the evidence presented. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). *See also* 6 J. Moore, *Federal Practice* ¶ 56.15[3] (2d ed. 1987).

### III

#### Findings of Fact

The parties have stipulated to the following pertinent facts:

1. Plaintiff Leo Heideman (Mr. Heideman) was hired by defendant on or about July 12, 1964 as Regional Manager, North Central Region. Stip. ¶ 1.

2. Defendant is a Minnesota corporation whose corporate name at all times pertinent to the instant litigation was Northland Foods, Inc.; Jeno's, Inc.; or PFL, Inc. Stip. ¶ 2.

3. In 1967, Mr. Heideman was promoted to the position of National Field Sales Supervisor and from 1970 to 1978 worked in

---

4. The "standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." *Id.* at

251, 106 S.Ct. at 2512 citing *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 2171, n. 11, 76 L.Ed.2d 277 (1983).

5. The language "if any" is clear, "summary judgment may be made pursuant to Rule 56 'with or without supporting affidavits.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

several different management positions with defendant, as a vice president, the last of which was Vice President, Sales, for the Central Division of defendant. Stip. ¶ 5.

4. During the course of his employment with Jeno's, Inc., Mr. Heideman worked primarily out of his home in Kansas City, Missouri and traveled on a varying basis (approximately on a monthly basis) to the corporate headquarters of Jeno's, Inc., in Duluth, Minnesota. He would ordinarily stay in Duluth when making these visits, a day and a night.

5. On or about December 6, 1978, Carl Hill (Mr. Hill) was employed by defendant as Senior Vice President, Marketing and Sales. He had previously been employed by defendant from about 1967 or 1968 until 1972. At the time he left defendant's employment in [1982], he was Executive Vice President of Marketing and Sales. Stip. ¶ 9.

6. On or about January 3, 1979, Mr. Hill's actual authority was made co-extensive with that of the then president of defendant, Dick Jones (Mr. Jones), and Mr. Hill reported directly to the chairman and vice chairman of defendant, not to Mr. Jones. Stip. ¶ 10.

7. On or about December 21, 1978, Mr. Hill wrote a confidential memorandum (the Hill memo) to Mr. Jones regarding what Mr. Hill referred to as "additional responsibilities for Parr and Carpenter." Parr and Carpenter, as referred to in the Hill memo, were John Parr (Mr. Parr), then the Vice President of Sales of defendant, and Morris J. Carpenter (Mr. Carpenter), then the Vice President of Marketing of defendant, both of whom reported to Mr. Hill. Mr. Parr was then Mr. Heideman's immediate supervisor. Stip. ¶ 11.

8. Courtesy copies of the Hill memo [6] were directed to be delivered to Messrs. Parr, Carpenter, and Mick Paulucci (Mr. Paulucci). Mr. Paulucci was then the Vice Chairman of the Board of Directors of defendant. The document appended to this stipulation as "Exhibit A" appears to be a

true copy of the courtesy copy of that memo delivered to Mr. Carpenter; however, defendant does not know who made the handwritten comments thereon, nor when they were made. Stip. ¶ 12.

9. Mr. Hill admits that it is possible, but thinks it unlikely, that he wrote the following words in the upper right-hand corner of the first page of the Hill memo "Jay—Read and Destroy." Stip. ¶ 13.

10. Around Christmas 1978, when Mr. Heideman was visiting defendant's office in Duluth, Minnesota, Mr. Hill called Mr. Heideman into Mr. Hill's office and advised Mr. Heideman that Mr. Heideman was being demoted from Vice President, Sales—Central Division, to Manager of the Memphis Region, that he was expected to build up the Memphis Region, that he would have to move immediately and take over this new responsibility, and that Mr. Heideman would not receive any reduction in pay with respect to this demotion. Stip. ¶ 14.

11. After considering the proposed relocation to Memphis, Tennessee and demotion, and discussing the same with Mrs. Heideman, Mr. Heideman decided to accept the offered relocation and responsibility. Had he not accepted the offer, he would not have been able to continue his employment with defendant. Stip. ¶ 15.

12. Mr. Heideman was replaced as a vice president of defendant by Ed Korkki (Mr. Korkki). Mr. Korkki was born July 18, 1940. Stip. ¶ 16.

13. On or about June 1, 1979, Mr. Heideman was advised by Mr. Parr by telephone that Mr. Heideman was being terminated, immediately. Stip. ¶ 18.

14. Mr. Heideman lived, worked, and was in Tennessee at the time that he was terminated, and had been assigned to the Memphis territory for approximately five months. Mrs. Heideman also resided in Tennessee with her husband. Stip. ¶ 19.

15. Mr. Heideman, during his entire employment by defendant, never heard of any problems within defendant's organization

---

**6.** A copy of this memo is attached as Appendix A and incorporated herein by this reference in our findings of fact.

concerning age discrimination. It never occurred to him, until he subsequently received a copy of the Hill memo in 1986, that he might have been the victim of age discrimination practices by defendant. Stip. ¶ 20.

16. At the time of his termination or shortly thereafter, Mr. Heideman felt that the reason that Mr. Parr gave him was not the real reason that he was being terminated, and that he was being lied to. Stip. ¶ 21.

17. Mr. Heideman suspected, after being notified of his termination, that he had been lied to by Mr. Hill when he was demoted and offered the position in Memphis, in that Mr. Hill then actually wanted to cause Mr. Heideman to voluntarily resign, or terminate him shortly after transferring him to the Memphis office, not have him build the Memphis Region. Mr. Heideman did not have any opinion or belief, however, as to the real reason he was terminated. Stip. ¶ 22.

18. Mr. Heideman visited a federal agency office in Memphis, Tennessee, which he believes to have been the National Labor Relations Board, in an effort to see if he could get some help in forcing defendant to tell him the reason for his termination. The agency representative with whom he met stated that they were unable to help him, and referred him to a private attorney in Memphis. Mr. Heideman does not recall any mention made regarding age discrimination laws during his visit at the agency office. Stip. ¶ 23.

19. The same day Mr. Heideman visited the federal agency office, he visited with the attorney referred to him by the agency representative. The attorney advised Mr. Heideman that the employer did not have to give him a reason for termination, but could terminate him without a reason. The attorney offered to look into the matter if Mr. Heideman was willing to pay him $70 per hour. Under the circumstances, Mr. Heideman decided it did not make sense to employ the attorney, so he just dropped the matter. Mr. Heideman does not recall any mention made regarding age discrimination laws during his visit with the attorney. Stip. ¶ 24.

20. Almost immediately after being advised by Mr. Parr that Mr. Heideman was terminated, Mr. and Mrs. Heideman decided to return to Kansas City. They sold their house in the Memphis area on or about August 1, 1979 and immediately moved back to Kansas City. Stip. ¶ 25.

21. On or about August 29 or August 30, 1986, Mr. Heideman received from Mr. Lawrence Williams (Mr. Williams) an unsolicited copy of the Hill memo. This was the first time Mr. Heideman suspected that he may have been the victim of age discrimination practices by defendant. Stip. ¶ 26.

22. Within two or three days after his receipt of the Hill memo, Mr. Heideman visited the Equal Employment Opportunity Commission (EEOC) office in Kansas City, Missouri. Mr. Heideman filed a charge of discrimination with the EEOC on or about September 5, 1986. Stip. ¶ 27.

23. Mr. Heideman visited with one of his attorneys in the instant litigation, Mark J. Klein (Mr. Klein) on September 6, 1986, to determine if he had a right to private action against defendant arising out of defendant's actions. Stip. ¶ 28.

24. On August 23, 1986, before he had knowledge of the Hill memo, Mr. Heideman wrote to Jeno Paulucci stating his belief that he "was moved for a reason then fired on purpose." Stip. ¶ 29.

25. Plaintiffs filed suit in the Circuit Court of Jackson County, Missouri on November 25, 1987, and this action was subsequently moved to this Court on January 4, 1988. Stip. ¶ 30.

Under the procedures directed pursuant to this Court's August 31, 1988 order, the parties also set forth those facts which they deemed material and in genuine issue in regard to the contentions made. We find and conclude that plaintiff has not presented any material facts in genuine issue for reasons that we state in the text to follow.

## IV

### Analysis

A.   ADEA Claim (Count I)

In Count I of the complaint, plaintiffs allege that Mr. Heideman's termination

from defendant's company which occurred June 1, 1979 (see Stip. 18) was in direct violation of ADEA in that plaintiff's firing was the result of a "blatant and outrageous scheme of age discrimination." Memo in Oppos. to Deft's Mot. for S.J. on Stat. of Limit. Issue at 1. Plaintiffs maintain that defendant fraudulently concealed the true reason why Mr. Heideman was fired from the plaintiff and that they, "cannot be held barred from a cause of action." *Id.* "Plainly and simply, this case is about corporate concealment of illegal activity which, upon first discovery by the plaintiffs, was acted upon with immediacy. Contrary to defendant's arguments ... none of plaintiffs' claims are barred by applicable statute of limitations." *Id.* at 2.

In order for plaintiffs to prevail on Count I, they must have filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged unlawful employment practice. 29 U.S.C. § 626(d).[7] Such a filing is a condition precedent to later filing a suit under ADEA. *Kriegesmann v. Barry–Wehmiller,* 739 F.2d 357 (8th Cir.1984), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). Suit must be filed within two years of the alleged unlawful practice or within three years in the case of a willful violation. 29 U.S.C. § 626(e). The unlawful employment practice in this case occurred on June 1, 1979.[8]

In some circumstances, the 180–day filing period provided under ADEA may be equitably tolled. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

Two types of equitable tolling have been acknowledged by the courts: (1) equitable tolling which focuses on the plaintiff's excusable ignorance of the statute period (*see Abbott v. Moore Business Forms, Inc.,* 439 F.Supp. 643, 646–49 (D.N.

H.1977); *Wright v. State of Tennessee,* 628 F.2d 949 (6th Cir.1980)), and (2) equitable estoppel which tends to focus upon actions taken by the defendant (*see Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir.1977); *see also Caudill v. Farmland Industries, Inc.,* 698 F.Supp. 1476 (W.D. Mo.1988).

Plaintiffs here assert both grounds for tolling the statute of limitations—that he was excusably ignorant of his cause of action because he did not see the posted notice of his ADEA rights, and that he was unaware of his claim because of the misconduct on the part of defendant in giving him a pretextual reason for his termination. Similarly, because of defendant's misconduct, defendant should be estopped from asserting the statute of limitations as a defense.

Plaintiffs allege that they learned of the unlawful discrimination motive only upon receipt of a copy of the Hill memorandum (*see* Appendix A) on August 29 or 30, 1986. "[I]t never occurred to Mr. Heideman, nor did he have any suspicion, until he received a copy [of the memo] ... that he might have been the victim of age discrimination...." Memo in Oppos. to Deft's Mot. for S.J. on Stat. of Limit. Issue at 7.

The Eighth Circuit has given some guidance as to when such tolling can occur:

The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakenly have understood would cause the employee to delay filing his charge. *Kriegesmann,* 739 F.2d at 358–59 citing *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982).

---

7. 29 U.S.C. § 626(d) provides:
   No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Opportunity Commission. Such a charge shall be filed—

   (1) within 180 days after the alleged unlawful practice occurred....

8. For a discussion of the Eighth Circuit's position on when the unlawful employment practice occurs and thus triggers the running of the statute, *see Wilson v. Westinghouse Electric Corp.,* 838 F.2d 286, 288 (8th Cir.1988).

Other circuits have similar guidelines.[9]

### 1. Notice Posting

■ Equitable tolling can occur if the defendant fails to post the required notice setting forth employees' rights under ADEA. *Kriegesmann*, 739 F.2d at 358.

■ Defendant has offered the affidavits of Mr. Sprague[10] and Mr. Henningsgard[11] which state that the required ADEA notices were in fact posted in the company headquarters in Duluth.[12] The statement by Mr. Heideman that he never saw any kind of notice posted on a bulletin board or elsewhere in defendant's office or other facilities, concerning age discrimination laws (Plt's Depos. at 174), is not enough to toll the statute nor does it create a factual issue for trial. *See Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983) (employee's statement that he did not recall ever reading a notice of ADEA rights was insufficient to create a question of fact).

The fact that plaintiff worked primarily out of his home rather than out of a corporate office does not affect the tolling issue.

Such a question was clearly answered in *Hrzenak v. White–Westinghouse Appliance Co.*, 510 F.Supp. 1086, 1092 (W.D.Mo. 1981), *aff'd*, 682 F.2d 714, 718 (8th Cir. 1982). "[E]mployee's assertion that he never saw any notices should not of itself require tolling...." *Id.* at 1092.

### 2. Affirmative Misconduct

■ We turn now to the question of whether the defendant engaged in any affirmative misconduct[13] which would cause the plaintiff to delay filing his ADEA claim and subsequent suit and thus toll the limitations period. The statute will not be tolled unless the employee's failure to file in a timely manner is a consequence either of a deliberate design by the employer, or of actions that the employer should unmistakenly have understood would cause the employee to delay filing his charge. *Kriegesmann v. Barry–Wehmiller Co.*, 739 F.2d 357, 358-9 (8th Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984).

■ Plaintiffs allege that the following facts when taken in combination amount to the requisite employer "deliberate design"

---

**9.** When the defendant wrongfully deceives or misleads the plaintiff in order to *conceal the existence of a cause of action,* the 180–day period will be tolled. *English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988) ("a time bar may be tolled on equitable grounds 'if the employee could show it was impossible for a reasonably prudent person to learn that his discharge was discriminatory' ") (*id.* at 1050) citing *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). *See also Lawson v. Burlington Industries*, 683 F.2d 862, 864 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982); *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985); *Coke v. General Adjustment Bureau*, 640 F.2d 584 (5th Cir.1981).

**10.** Exhibit A of Deft's Mot. for S.J.

**11.** Exhibit B of Deft's Mot. for S.J.

**12.** Plaintiffs offer no evidence that such notices were not posted.

**13.** For examples of what type of misconduct is and is not sufficient to allow equitable estoppel or tolling *see Wilson v. Westinghouse Electric*

*Corp.*, 838 F.2d 286 (8th Cir.1988); *English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir.1987); *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982) (summary judgment granted defendant—no tolling where employee believed employer would eventually rehire him through no misconduct by employer); *Price*, 694 F.2d 963 (4th Cir.1982); *O'Malley v. GTE Service Corp.*, 758 F.2d 818 (2d Cir.1985) (no affirmative misconduct found when employer delayed in sending certain retirement forms); *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20 (2d Cir.1985), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir.1985) (tolling would occur while employee waits to see if employer honors promise of reinstatement); *and see Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584 (5th Cir.1981); *Ott v. Midland–Ross Corp.*, 600 F.2d 24 (6th Cir.1979); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (defendant misled plaintiff as to necessity of filing claim); *Atkins v. Union Pacific R. Co.*, 685 F.2d 1146 (9th Cir.1982) (tolling occurred where defendant tells plaintiff he intends to settle dispute over termination).

which would result in equitable tolling of the statute under the test set forth in *Kriegesmann.* The fact that (1) Mr. Heideman was given a pretextual reason for his termination; (2) the Hill memo establishes an age discrimination policy; (3) there was an offer of an additional payment of $5,000 to Mr. Williams [14] if he would not circulate the Hill memo to anyone; and (4) Mr. Heideman was identified as one of the "middle-aged 'professional' sales managers" who Mr. Hill wanted replaced.[15] We find that none of these facts singly or in combination would justify tolling.

Plaintiff must come forward with evidence to show that what he was told by the defendant or actions taken by the defendant were intended to lull the plaintiff into sleeping on his rights and he must show actual and reasonable reliance upon defendant's misconduct or representations. *See Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981).

The fact that defendant may have misled the plaintiff as to *why* he was fired is not enough. Plaintiff must rely on those misrepresentations. "[T]he attempt to mitigate the harshness of a decision terminating an employee, without more, cannot give rise to an equitable estoppel." *Kriegesmann,* 739 F.2d at 358.[16]

Mr. Heideman was told by Mr. Parr that he was fired because he no longer fit into Mr. Hill's plans (Plt's Depos. at 82–85), however, plaintiffs' counsel states that Mr. Heideman never believed the reason given by Mr. Parr. "At the time of his termination or shortly thereafter, Mr. Heideman felt that the reason that Mr. Parr gave him was not the real reason that he was being terminated, and that he was being lied to." Stip. ¶ 21. In reply to the question "when did you first believe that Carl Hill had deceived you?" [about the reason given for termination], plaintiff replied, "five minutes after I hung up the phone...." Plt's Depos. at 123. Mr. Heideman states that he felt he was "terminated for what I saw was totally unjustifiable reason, it just didn't make any sense...." *Id.* at 84; "I was moved [transferred to Memphis] for a reason and then fired on purpose." Plt's Depos. at 121 referring to Deft's Exh. 7. "I was deceived...." *Id.* Mr. Heideman was so sure he had not been given the true reason that he went to what he now believes was the National Labor Relations Board to see if he could get help in finding out the true reason. Stip. ¶ 23.

Even before his termination, Mr. Heideman had misgivings about the way he was being treated by the defendant. Plaintiffs' counsel concedes that "Mr. Heideman was transferred by defendant to Memphis *under circumstances Mr. Heideman considered extremely questionable...."* (Emphasis added). Plts' Report on Stat. of Limit. Issues at 6. Counsel further concedes in Stipulation 22 that Mr. Heideman did not believe the reason given by Mr. Hill for his demotion and transfer to Memphis. At no time prior to his demotion was Mr. Heideman advised of any complaints about his job performance. Plt's Depos. at 57–58, 143–44. At no time prior to his termination was Mr. Heideman advised of any complaints about his job performance. *Id.* at 77–82, 96.

Furthermore, Mr. Heideman visited an attorney concerning his termination to find out if he could somehow uncover the true reason for his termination but he decided "it did not make sense to employ the attorney, so he just dropped the matter." Stip. ¶ 24. Mr. Heideman was also aware that he was replaced by a man 15–20 years his junior, Mr. Korkki. Plt's Depos. at 141.

---

**14.** Mr. Larry Williams was also an employee of defendant and he had timely filed an age discrimination lawsuit against the defendant which resulted in a $75,000 settlement.

**15.** Mr. Williams testified in his deposition that he had at least two conversations with Mr. Hill in which Mr. Heideman was so identified. Williams' Depos. 69–73.

**16.** "[T]he failure to tell plaintiff that he was demoted because of his age is not the type of deception or fraud that operates to toll the limitations period." *Klausing v. Whirlpool Corp.,* 623 F.Supp. 156, 162 (S.D.Ohio 1985), *appeal dismissed without opinion,* 785 F.2d 309 (6th Cir.1986).

■ Equitable tolling results in a delay of the running of the statute of limitations until " 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or *should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts* to put him on notice.' " (Emphasis added). *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir.1985) citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir.1974).

Given the foregoing facts and circumstances [17] surrounding Mr. Heideman's termination, we find and conclude that there were sufficient facts so that a reasonably diligent employee [18] would have been put on notice of his cause of action. Therefore there is no justification for equitable tolling of the statute of limitations nor do the circumstances create a factual issue for trial.

Plaintiff Heideman urges this Court to deny defendant's motion for summary judgment on the basis of material facts at issue and cites among others *Meyer v. Riegel Products Corp.*, 720 F.2d 303 (3d Cir. 1983). In *Meyer* the court held that a summary judgment was not appropriate because a material question of fact existed for the jury to determine where plaintiff had a suspicion that he had not been given the true reason for dismissal and had consulted an attorney. The case at hand presents many more factors to be considered than just suspicion and consultation—enough factors which make it possible for this Court to conclude that summary judgment is appropriate.

In the instant case there is ample evidence that plaintiff did not rely upon the pretextual reason given, it was plaintiff's own lack of diligence that led him to the present impasse. Every such plaintiff has an affirmative duty to make inquiry about his legal rights and to pursue those rights with due diligence. *See, e.g., United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *see also, Wehrman v. United States*, 830 F.2d 1480, 1484 (8th Cir.1987).

Based upon the foregoing analysis, we find and conclude that defendant's motion for summary judgment on Count I (ADEA claim) of plaintiff's complaint should be and is hereby granted.

## B. ERISA Claim (Count II)

■ Count II of plaintiffs' complaint alleges violations of Section 510 of ERISA (Interference with Protected Rights) and plaintiffs maintain that they are entitled to "relief under the provisions of 29 U.S.C. §§ 1132 and 1140 in that defendant's action in discharging Mr. Heideman had the purpose and effect of substantially decreasing Defendant's Retirement Plan benefits...." Heideman Petition at 9.

ERISA itself does not contain a statute of limitations for the bringing of civil action to recover benefits or to enforce rights under a pension plan. Therefore, the court must look to the most appropriate state statute of limitations. *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).

The choice of state law applicable here is either Tennessee or Missouri, however, the Court need not decide the choice of law question because under either state law, plaintiffs' cause of action is time-barred.[19]

---

**17.** "Whether to grant equitable relief from the statutory provisions is a matter that should be determined 'on a case-by-case basis, depending on the equities in each case." *Naton*, 649 F.2d at 696 citing *Hageman v. Philips Roxane Lab., Inc.*, 623 F.2d 1381, 1385–86 (9th Cir.1980).

**18.** The factual circumstances in *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407 (7th Cir. 1984), are similar to the instant case. There the plaintiff knew he was demoted, knew he was replaced by a younger man and knew he had consistently obtained good job performance evaluations. The district court found that the statute began to run when he was aware of those facts listed above and not when he first learned that his employer had replaced most managers over age 50 with younger men. *Id.* at 410–11.

**19.** Under Tennessee law an action under 29 U.S.C. § 1132 is governed by the six-year statute of limitations applicable to contracts. Tenn. Code Ann. § 28–3–109 (1980); *Haynes v. O'Connell*, 599 F.Supp. 59, 62 (E.D.Tenn.1984). Under Missouri law an even shorter period of five

The facts in this case are clear that there is no basis for equitable tolling of the applicable statute of limitations for the reasons given in the Court's earlier discussion of plaintiffs' ADEA claim.

For the reasons stated above, we find and conclude that defendant's motion for summary judgment on Count II (ERISA claim) of plaintiffs' complaint should be and is hereby granted.

### C. State Common Law Claims

1. Intentional Infliction of Emotional Distress (Count IV) and Loss of Consortium (Count V)

Plaintiffs have a variety of theories under which they maintain that neither Missouri's five-year statute of limitations [20] nor Tennessee's one-year statute of limitations [21] defeats their claims in Counts IV and V.

First, plaintiffs argue that their cause of action did not accrue at the time of plaintiff's termination in July 1979 but that their cause of action arose when they received the Hill memorandum on August 29 or 30, 1986. Plaintiffs argue that their cause of action was fraudulently concealed from them and that Mo.Rev.Stat. § 516.280 applies "[i]f any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such an action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

Second, plaintiffs argue that their cause of action did not arise until later than 1979. Plaintiffs cite Mo.Rev.Stat. § 516.100 "[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertain-ment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Plaintiffs maintain that the last item of damage occurred in 1984 while plaintiff was living in Missouri when plaintiff began losing his sight or at some unspecified future date when his emotional distress began to subside, also while plaintiff resided in Missouri.

Thirdly, plaintiffs contend that defendant should be equitably estopped from pleading Tennessee's one-year statute of limitations because plaintiffs were long-established Missouri residents and only were located in Tennessee for a few months and then only because defendant induced them to move to Tennessee.

■ Defendant maintains that both counts are barred by Missouri's borrowing statute, Mo.Rev.Stat. § 516.190 (1989 Supp.) which states: "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Since Counts IV and V are personal injury torts which arose in Tennessee, they are governed by Tennessee law.

Actions for libel, for injuries to the person, false imprisonment, malicious persecution ... shall be commenced within one (1) year after the cause of action accrued.

Tenn.Code Ann. § 28–3–104(a) (1980).

For the reasons set forth below, we find and conclude that plaintiffs' Count IV and Count V both are time-barred by the Missouri borrowing statute.

The Eighth Circuit has made clear that "[t]he plain meaning of the [borrowing] statute in question is that where the tort takes place in a foreign jurisdiction, Mis-

---

years would apply. Mo.Rev.Stat. § 516.120(1); *Fogerty v. Metropolitan Life Ins. Co.,* 666 F.Supp. 167, 169 (E.D.Mo.1987), *aff'd,* 850 F.2d 430 (8th Cir.1988).

**20.** What actions within five years.
(4) An action for ... any other injury to the person or rights of another, not arising on contract....

Mo.Rev.Stat. § 516.120.

**21.** "Actions for libel, for injuries to the person, false imprisonment, malicious persecution, ... shall be commenced within one (1) year after cause of action accrued." Tenn.Code Ann. § 28–3–104(a).

souri will adopt the statute of limitations of that jurisdiction barring the cause of action." *McIndoo v. Burnett,* 494 F.2d 1311, 1313 (8th Cir.1974). In the instant case, the tortious conduct—the termination of plaintiff—took place in Tennessee. Stip. ¶ 18.[22] The plaintiff resided in Tennessee at the time of the wrongful termination. The injuries sustained by the plaintiff occurred in Tennessee when he was terminated and not at some later date as plaintiff maintains.

### 2. Fraudulent Inducement to Accept Transfer to Memphis, Tennessee (Count III)

■ Plaintiffs' final count is based on the same set of allegations as plaintiff maintains in his ADEA claim earlier discussed. Plaintiff contends that defendant defrauded him into transferring to Memphis, Tennessee and then terminated him due to his age. Complaint ¶¶ 35, 37; Plt's Depos. at 147. Plaintiff argues that this fraud began in December 1978 when he was offered the transfer and ended when he was terminated in June 1979. Plaintiff states, however, that the fraud was not discovered until August 1986 upon receipt of the Hill memo and thus plaintiff may take advantage of Mo.Rev.Stat. § 516.120(5): "An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting fraud."

Here, plaintiffs' argument fails as it has previously failed. This cause of action began to run upon plaintiff's termination in 1979. At which time he felt "deceived" about his transfer. Plt's Depos. at 84. Further evidence of when a reasonable person would have been aware of the facts constituting fraud have been previously dealt with in this memorandum and order and will not be reiterated here.

It is therefore

ORDERED (1) that defendant's motion for summary judgment on Counts I, II, III, IV, and V should be and the same is hereby granted. It is further

ORDERED (2) that the Clerk of this Court shall enter final judgment in favor of defendant and against plaintiff in accordance with Rule 58 of the Federal Rules of Civil Procedure.

*See also Western Newspaper Union v. Woodward,* 133 F.Supp. 17 (W.D.Mo.1955) ("It is the general law ... that in tort actions governed by state law, the law of the state in which the injury or loss was suffered and which, hence created the right, governs the tort....") *Id.* at 23.

---

**22.** The fact that plaintiff was called by phone from Duluth and informed he was terminated does not affect the determination that the tort took place in Tennessee. The cause of action for an injury to an individual occurs where that individual was located at the time of the injury. *Electric Theater Co. v. Twentieth Century–Fox Film Corp.,* 113 F.Supp. 937 (W.D.Mo.1953).

## APPENDIX A

### ·M E M O R A N D U¡·

December 21, 1978

TO:      Dick Jones

FROM:    Carl Hill

RE:      <u>ADDITIONAL RESPONSIBILITIES FOR PARR AND CARPENTER</u>

Dick, in the bonus plan description that I detailed to you by memo, I suggested that there are responsibilities that are non-quotaed that are necessary at the Divisional Vice President level in order to achieve a sales force with "teeth". This memo will serve to explain exactly what I mean.

We currently have a situation in our field sales management organization in which we have many middle-aged "professional" sales managers. Although I have nothing against "middle-aged people" certain things begin to happen when a man approaches his "50's". They are as follows:

1. He becomes, generally, financially secure, i.e...his house may be paid for and his family is grown.

2. He has an excess of discretionary income, i.e....he now owns a cottage or a boat or other recreational vehicles that make him look forward to four-day weekends.

3. He physically begins to slow down and becomes both matured and is not easily excitable. In short, the enthusiasm easily developed in a younger man is not so easy to build in a fellow that has "seen it all".

4. After the age of 50 a man becomes a liability in two ways:

   a. He can't find a job anywhere else and we are "married to him" until retirement.

   b. He becomes less responsive to job change, i.e. no more transfers, no more additional challenges.

Needless to say, Parr and Carpenter's responsibilities are heavy in this area. For instance, we have just today received word that one of our men in this category received a serious injury (broken hip) in an automobile accident. As heartless as it may seem, it is an absolute necessity to create an organization that is least susceptible to these kinds of problems.

We need to create a field sales force that consists of men between 25 and 45 who are highly motivated by bonuses and trying to make their "mark" on the world. If done properly this would create a situation in which we had strong young regional management, highly motivated, constantly "pushing" for promotion,

MEMO TO: DICK JONES
RE: ADDITIONAL RESPONSIBILITIES
     FOR PARR AND CARPENTER
Page 2
December 21, 1978

and in general striving for the goal of success. We would then logicall lose some of these men every four or five years as they went on to other companies in positions of higher responsibility and of course would be replaced by new younger men to repeat the cycle. If by some chance we ha men approaching the "problem age" we should be willing and ready to help those men move on by making their exit from Jeno's a comfortable one. This would be accomplished by having a frank discussion with a man betwee 45 and 50 and telling him his future at Jeno's is limited and that it woul be advisable for him to look for work elsewhere. He should be given a fai amount of time to find employment elsewhere (six months, for example) and he would then leave us by resigning. No one needs to be the wiser and we would then be able to re-orient that region with younger more motivatable personnel.

Obviously; these comments have a tendency to leave a foul taste in one's mouth...However, properly administered, no one needs to be hurt and our organization can get the best possible sales manager responsibility and performance. I view this function the most important part of the responsibility for Parr and Carpenter. If these things are accomplished, quotas become a matter of fact. Unfortunately, our company for at least five years has not paid attention to this kind of aggressive thinking and in so doing we are in a position where we have too many "lifers" in the staff. John and Jay are both aware of my thoughts on this situation and have been directe to develop the Sales organization along the lines stated in this memo. You can see, then, how important it is for me to have a discretionary bonus based on achievement of these non-fiscal goals.

Please let me know if you have any further question.

Thanks.