William L. McCLURE, Jr.,
Plaintiff–Appellant,

v.

ZOECON, INC., f/k/a Zoecon Industries,
Inc., Defendant–Appellee.

No. 90–1489.

United States Court of Appeals,
Fifth Circuit.

July 11, 1991.

Peter K. Woody, Springfield, Ill., for plaintiff-appellant.

Mary B. Spector, Randall R. Kucera, Kathleen L. Maloney, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for defendant-appellee.

Before THORNBERRY, JOLLY and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Exactly four years to the day after Zoecon fired William McClure, McClure brought suit against his erstwhile employer, alleging that Zoecon had terminated him in order to forestall his receipt of medical and disability benefits, a violation of ERISA § 510, 29 U.S.C. § 1140.[1] The United States District Court for the Northern District of Texas summarily dismissed the suit as time-barred by the two-year Texas statute of limitations applicable to wrongful discharge and employment discrimination claims, prompting the instant appeal. We believe the district court applied the proper Texas limitations statute and thus affirm.

I

The facts in this case are few, largely undisputed, and not of great relevance. Sometime around April 27, 1984, McClure received and accepted a written offer of employment from Zoecon. McClure assumed his duties on May 8 of that same

---

1. § 510 reads as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

year; shortly thereafter, he was transferred from Zoecon's "residue group" to its "quality control lab," apparently on account of personality clashes that he had had with the residue group supervisor.

If McClure's allegations are true, these personality clashes proved costly. He contends that in February of 1985 he was exposed to pesticides while working in the laboratory; he further contends that he later learned through a physician that this exposure had caused him harm. Furthermore, on May 15, 1985, Zoecon fired McClure, a termination he argues "was pretextual and not based on job performance but was for the purpose of preventing ... or interfering with the attainment of rights under [Zoecon's] health care, welfare and life insurance plans."

On May 15, 1989, McClure filed his original complaint against Zoecon, which was amended on June 9, 1989, to include his wife as a party plaintiff. By motion filed February 22, 1990, Zoecon asked for summary judgment on the grounds that the McClures' action was time-barred. The district court concurred and, on May 21, 1990, entered judgment accordingly. This timely appeal ensued.

## II

We are asked to decide a narrow if novel issue. The parties agree that, since ERISA provides no statute of limitations for § 510 actions, the McClures' § 510 claim is subject to the Texas limitations statute that governs the Texas action most analogous to a § 510 claim.[2] *Henson–El v. Rodgers*, 923 F.2d 51 (5th Cir.1991); *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988); *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 342 (5th Cir.1981). The litigants part company only with respect to the proper characterization of a § 510 claim. Zoecon—as well as the court below—thinks a § 510 suit most similar to a wrongful discharge or employment discrimination claim and, consequently, subject to the two-year prescription period Texas applies to such claims. *See Tex.Civ.Prac. & Rem.Code* § 16.003 (Vernon 1986). The McClures, on the other hand, urge a different characterization—that of a contract claim—and accordingly ask that their § 510 action be measured against the four-year Texas limitations statute that governs suits sounding in contract. *See Tex.Civ.Prac. & Rem.Code* § 16.004 (Vernon 1986).

As suggested above, we have yet to decide the proper characterization of a § 510 action for limitations purposes. Other courts have considered this question, however, and nearly all have construed § 510 claims as wrongful discharge or employment discrimination claims. *See Gavalik v. Continental Can Co.*, 812 F.2d 834, 843–46 (3rd Cir.), *cert. den.*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *Held v. Manufacturers Hanover Leasing Corporation*, 912 F.2d 1197 (10th Cir.1990); *Young v. Martin Marietta Corp.*, 701 F.Supp. 567, 569 (E.D.La.1988); *Gladich v. Navistar Int'l Transp. Corp.*, 703 F.Supp. 1331, 1333 (N.D.Ill.1989); *Corkery v. Super X Drugs Corp.*, 602 F.Supp. 42 (M.D.Fla.1985). Today we follow their lead. In fact, we would be pressed to do otherwise, given that § 510 by its terms proscribes specified acts of "discharge" and "discrimination," and given the specific allegations in the McClures' complaint.

Our research has uncovered but two cases taking a contrary view of § 510 actions,[3] neither of which persuades us. In

---

**2.** The practice of borrowing statutes of limitations from state law admits of a "closely circumscribed exception." *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). That exception, however, applies only "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello v. International Brotherhood of* *Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983). Seeing no such federal rule, we today apply a state statute.

**3.** The McClures cite several cases where ERISA actions have been characterized as contract claims. *See, e.g., Jenkins v. Local 705 International Brotherhood of Teamsters*, 713 F.2d 247, 252 (7th Cir.1983); *Fogerty v. Metropolitan Life Insurance Co.*, 850 F.2d 430, 432 (8th Cir.1988). Without fail, however, these cases involve an ERISA participant or beneficiary's

*Heideman v. PFL, Inc.,* 904 F.2d 1262, 1267 (8th Cir.1990), the Eighth Circuit subjected a § 510 claim to a six-year state limitations period ordinarily reserved for contract actions. It did so without analysis, however, allocating only one sentence to the issue of which limitations statute properly applied.[4] Moreover, there is nothing to indicate that the characterization question was ever a point of contention in *Heideman;* the parties may well have agreed—albeit mistakenly—that a § 510 suit most resembles a contract claim. Although the same cannot be said of *Clark v. Coats & Clark, Inc.,* 865 F.2d 1237 (11th Cir.1989), which devotes considerable attention to the § 510 typification problem, it suffers from faults of its own. In *Clark,* the Eleventh Circuit began by looking to the purpose of ERISA, which it assayed as the provision of "adequate retirement income to persons who have spent their careers in a productive capacity." *Clark,* 865 F.2d at 1242. From this, the court concluded that ERISA was concerned solely about "economic rights" (rather than "individual or personal rights") and that, therefore, a § 510 action is "founded on contract." *Id.* However, in analyzing § 510, the Eleventh Circuit did not consider whether a wrongful discharge characterization would be most fitting; instead, it chose the plaintiffs' contract analogue over the personal injury analogue urged by the defendant.[5] What is more, the court's decision to classify § 510 on the basis of Congress's purpose in passing the *entirety* of ERISA—as opposed to its purpose in passing § 510 particularly—seems overly broad and thus improperly focused. *See, e.g., Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (characterizing § 1983 actions as personal injury claims because of the purpose underlying § 1983); *Good-*

*man v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) (characterizing § 1981 actions with reference to Congress's goals in passing that section); *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (characterizing claims under § 101(a)(2) of the Labor–Management Reporting and Disclosure Act in reliance on purpose behind § 101(a)(2)). Even if it were proper to ascribe to § 510 a solely "economic" purpose, it by no means follows that § 510 claims are contractual; after all, the law recognizes several economic yet non-contractual causes of action, among them claims of wrongful discharge and employment discrimination. And finally, *Clark's* categorization § 510 suits is dicta, seeing as the court ultimately forewent a contract limitations statute in favor of a statute governing "actions to enforce statutory rights," which in the court's eyes "much more narrowly ... contemplate[d] the [plaintiffs' § 510 claim].…" *Clark,* 865 F.2d at 1242.

### III

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

THORNBERRY, Circuit Judge, dissenting.

This case presents a narrow issue, but one of first impression within our circuit, an issue upon which the circuits are split: does a plaintiff's claim for employment benefits under section 510 of ERISA more closely resemble an employment discrimination claim or a breach of contract claim?

Courts have consistently concluded that an employee's right to the benefits secured

---

§ 502(a)(1)(B) suit "to recover benefits due to [him] under the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). While perhaps well-decided, these cases have no bearing on our characterization of the McClures' § 510 claim.

**4.** "The limitations period covering contracts is six years, Tenn.Code Ann. § 28–3–109 (Repl. 1980), and thus, as the District Court ruled, the

ERISA claim is time-barred." *Heideman,* 904 F.2d at 1267. The district court opinion is equally bereft of analysis. *Heideman v. PFL, Inc.,* 710 F.Supp. 711 (W.D.Mo.1989).

**5.** In passing, the court did consider an employment discrimination characterization, rejecting it on the ground that "appellants' claims do not allege any discriminatory action.…" *Id.* at 1241.

by ERISA is a contractual right. The majority does not dispute this, yet it still concludes that an employer's action in depriving the employee of that right is more analogous to the tort claims of wrongful discharge or employment discrimination than to a breach of contract action.

Applying Texas's two-year statute of limitations for tort actions, the majority concludes that the plaintiff's claim for relief in the case before us was filed untimely, and it affirms the summary judgment order issued against him. Because I would have held that Texas's four-year statute of limitations for contract actions was applicable and allowed the plaintiff to pursue his claim for relief, I respectfully dissent.

## I

The plaintiff, William McClure, alleges that his employer, Zoecon, Inc., terminated his employment to prevent him from taking advantage of the health care, welfare, and life insurance benefits to which he was entitled as an employee of Zoecon. McClure brought an action against Zoecon invoking section 510 of ERISA, which makes it illegal for an employer to interfere with protected rights under a given employee benefit plan. *See* 29 U.S.C. § 1140. Since section 510 does not provide for a statute of limitations, courts must apply the limitations period for the state law most analogous to section 510. *See Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). The issue presented for our consideration asks whether a violation of section 510 is more equivalent to a cause of action in contract or a cause of action in tort.

## II

An appropriate method for selecting the state law most analogous to McClure's section 510 action is to examine the elements of the cause of action. *See Garcia*, 471 U.S. at 268, 105 S.Ct. at 1943. The nature of the employer's duty of non-interference under section 510 is rooted in the employee's right to benefits provided by an ERISA plan. As noted by the majority, several courts have defined this right as a contractual right. *See* Majority Opinion at

778–79 n. 3; *see also Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1207 (10th Cir.1990); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir.1987). Given that the right to benefits under an ERISA plan has been defined as a contractual right, I find it anomalous to suggest, as the majority does, that the employer's duty not to deprive the employee of those contractual rights is a tort. If the right to benefits is contractual then the corresponding duty to provide those benefits must also be contractual.

The majority's sole justification for classifying a section 510 action as a "tort" is that the statute uses the words "discharge" and "discriminate." *See* Majority Opinion at 778. These words, however, are nothing more than red herrings. An employer's decision to selectively breach a contract with employee X rather than employee Y may be described as discrimination against employee X but that does not change the fact that the essence of the cause of action remains in contract. For the purposes of selecting an appropriate statute of limitations, our focus must remain on the rights and duties involved and not on the actions taken by the parties.

## III

I would have followed the lead of the Eleventh and Eighth Circuits in classifying a section 510 action as a contract action for the purposes of applying a statute of limitations. *See Heideman v. PFL, Inc.*, 904 F.2d 1262, 1267 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1242 (11th Cir.1989). Since, Texas provides for a four-year statute of limitations for contract actions, I would have concluded that McClure's request for relief was timely filed. *See Tex.Civ.Prac. & Rem.Code Ann.* § 16.004 (Vernon 1986) (statute of limitations for contract actions). Under such circumstances, I would have reversed the district court's summary judgment order and remanded the case for further proceedings.