**Rebecca L. MYERS, Plaintiff,**

v.

**COLGATE–PALMOLIVE COMPANY, Defendant.**

**Nos. 96–4095–SAC, 97–4122–SAC.**

United States District Court, D. Kansas.

May 16, 2000.

David O. Alegria, McCullough, Wareheim & LaBunker, Topeka, KS, for plaintiff.

Brian J. Clark, Domenique Camacho, Clifton, Budd & DeMaria, LLP, New York City, Jack D. Rowe, Patrick M. Gavin, Lathrop & Gage, L.C., Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case (No. 96–4095) comes before the court on the defendant Colgate–Palmolive Company's ("Colgate") motion for summary judgment (Dk. 54). This is an employment discrimination case in which the plaintiff Rebecca L. Myers ("Myers") alleges that Colgate discriminated against her because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and because of her sex in violation of Title VII, 42 U.S.C. § 2000e et seq. Also pending in this case are Defendant's Motion for Determination of the Place of Trial, and plaintiff's Objection to the Magistrate's Order dated April 24, 1997. Consolidated with this case is another (No. 97–4122) which the same plaintiff has filed against the same defendant involving the same course of events, but brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1101 et seq., ("The ERISA case"). A motion to dismiss is pending in the ERISA case. The court will first address the discrimination case and its related motions

## I. SUMMARY JUDGMENT MOTION

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will ... pre-

clude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.,* 849 F.2d 1269, 1273 (10th Cir.1988).

The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to" the nonmovant's claim or position. *Martin v. Nannie and Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir.1993) (citations omitted). The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348, 89 L.Ed.2d 538; it requires " 'present[ing] sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Industries, Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991)).

The court views the evidence of record and draws all reasonable inferences in the light most favorable to the nonmovant. *Id.* A party relying on only conclusory allegations cannot defeat a properly supported motion for summary judgment. *White v. York Intern. Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins. Corp.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

Summary judgments " 'should seldom be used in employment discrimination cases.' " *O'Shea v. Yellow Technology Services, Inc.,* 185 F.3d 1093, 1098 (10th Cir.1999) (quoting *Smith v. St. Louis University,* 109 F.3d 1261, 1264 (8th Cir. 1997)). Because discrimination claims often turn on the employer's intent, courts ordinarily consider summary judgment inappropriate to settle an issue like intent, *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 530 (10th Cir.1994); *see Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994) ("[T]he summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." (quotation and citation omitted)). Even so, summary judgment is not "per se improper," *Washington v. Lake County, Ill.,* 969 F.2d 250, 253 (7th Cir.1992), and may be useful in weeding out claims and cases obviously lacking merit, *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700, 709 (10th Cir.1988), *overruled on other grounds, McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

## STATEMENT OF UNCONTROVERTED FACTS

The court's burden to determine the material facts has been increased in this case due to the parties' citation in their briefs to portions of testimony not included in the record, and to citations of fact not supported by the record.

For purposes of this motion only, the court considers the following to be the uncontroverted facts relevant to its ruling:

1. Myers began working for Colgate on April 15, 1974 as an associate chemist in the plant's quality assurance department. In that position, Myers performed analytical testing on finished products, raw materials and product intermediates.

2. In 1977, Colgate promoted Myers to plant chemist where she reported to the manager of the Quality Assurance ("Q.A.") department. In that position, Myers supervised the senior chemist, the associate chemists, and line inspectors.

3. In 1978, Myers became pregnant, and was transferred to a secretarial job in the General Accounting office, at the same salary as she had been earning as plant chemist. (Dk. 58, Exh. 6, ¶.25–27). Sometime after returning from her maternity leave, Myers became chief inspector in Q. A., in which position she continued to receive the same salary as before, with subsequent pay increases. (Id., ¶.26–28). Myers continued to supervise the line inspectors until 1991 or 1992 at which time she became responsible for supervising the chemists as well. (Id., ¶. 51–52; Dk. 54, Exh. 6, p. 24).

4. Beginning in the late 1980's, Colgate began restructuring its operations, which eventually resulted in fewer employees working at the Kansas City plant where Myers worked. (Dk. 58, Exh. 6, p. 86–88; Dk. 54, Exh. 3, ¶. 28,97). In 1993, the Kansas City plant overspent its budget, its cost structure was not in line with the original plan, and its efficiency rate was poor, generating a reorganization and reduction of employees and changes in structure in the summers of 1994 and 1995. (Dk. 54, Exh. 3, p. 38, 44). Those changes reduced the Q.A. department in which Myers worked from having a total of 12 employees in 1994, to 10 employees in 1995, and 7 employees in 1996. (Dk. 54, Exhs. 5,7, & 10).

5. To lower costs in the Kansas City plant, the manager of manufacturing, Robert W. Dietz, looked at other Colgate plants to see what their structure was, and compared that to the size and structure and operations in the Kansas City plant to determine what work could be eliminated. (Dk. 54, Exh. 3, ¶.27 45, 87–88). Dietz looked at job functions, performed position analyses, determined which job functions were needed on an ongoing basis and which could be done somewhere else, talked to his peers at other Colgate plants, and identified potential jobs that could be eliminated at the Kansas City plant. (Id., p. 88–89).

6. In determining whether to eliminate a position held by only one person, neither the tenure nor the performance of the person then holding that position was considered. (Id., p. 90). Colgate's policy was to terminate the employment of the person who held the eliminated position, without regard to his or her rank, tenure, or job performance, unless a vacant position then existed for which the person was qualified. (Id., p. 90–91; Dk. 58, Exh.5, p. 92). The incumbent whose position was eliminated was not permitted to displace or "bump" less senior employees. (Dk. 54, Exh. 6, p. 22–23). Job performance, performance evaluations, or employee profiles were considered only in the event more than one individual held the position to be eliminated, and after the determination had been made regarding which positions to eliminate. (Id.; Dk. 58, Exh. 7, p. 103; Dk. 54, Exh. 6, p. 22–23; Dk. 59, Exh. C, p. 139–140).

7. The Human Resource Manager and Dietz had complete discretion as to where and how to reduce costs. (Dk. 58, Exh. 7, ¶.12, 131).

8. In August of 1994, after the Q.A. department had been significantly reduced, Dietz decided to eliminate Myers' position as Q.A. supervisor, and Myers was offered and accepted a position as a reliability engineer at the same salary and grade level as her Q.A. position had been. (Dk. 54, Exh. 3, p. 88–89; Dk. 58, Exh. 6, p. 84–85). James R. Schulz, also in Q.A. at the time, was transferred to an alternative

position in the same department, (Dk. 54, Exh. 3, p. 97), but three other positions were eliminated from Q.A. at that same time, and the persons holding those positions were terminated. (Id., p. 87–88; 106–07).

9. The reliability engineer position which Myers accepted was not created as a temporary position, but as a permanent, full-time position within the Q.A. department. (Dk. 58, Exh. 5, p. 152; Dk. 58, Exh. 8, p. 25; Dk. 58, Exh. 7, p. 50, 75–76; Dk. 54, Exh. 3, p. 152). No review of Myers' job performance was made, or played any role in the determination to transfer her from Q.A. supervisor to the reliability engineer position. (Dk. 58, Exh.7, p. 43, 50; Dk. 58, Exh. 5, p. 84, 90–92).

10. In the summer of 1995, Myers and Schulz, both in the Q.A. department, were both terminated due to elimination of their positions. (Dk. 54, Exh. 4, p. 129; Dk. 54, Exh. 9, p. 448). The decision to terminate Myers was made without regard to her rank or work performance, (Dk. 58, Exh. 5, p. 136, 151), and was based upon the belief that there were too many people in Q.A. for the size of the plant in Kansas City (Dk. 58, Exh. 8, p. 43), and an elimination of middle management positions. (Dk. 58, Exh. 8, p. 60). At the time of his termination, Shultz was in his 30's. (Dk. 54, Exh. 9, p. 448).

11. After Myers' termination, some of her job duties were eliminated, and the remaining responsibilities were split up among various employees in the Kansas City plant, and in other Colgate plants. (Dk. 59, Exh. B., p. 113, 118–119,120, 121; Dk. 54, Exh. 3, p. 103).

12. Jacquelyn Miller, another senior female Colgate employee, not in the Q.A. department, was terminated approximately six weeks after Myers was, and received a letter identical to the one Colgate sent Myers, indicating that her termination was due to restructuring. (Dk. 58, Exhs. 2 & 3). A replacement was hired for Miller soon after her termination, and the position she held was not eliminated.

13. In 1995, when Dennis Fletcher's position as a process engineer was eliminated, he was placed in another position at Colgate.

## RELEVANT LAW—DISCRIMINATION CLAIMS

### Termination

The primary, if not the sole, claim made by plaintiff is that she was terminated from her employment on the basis of her age and/or sex, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Title VII, 42 U.S.C. § 2000e et seq., respectively. The ADEA makes it unlawful for an employer, "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The protected class under the ADEA are individuals "who are at least 40 years of age." 29 U.S.C. § 631(a).

To prevail on her wrongful termination claim, the plaintiff " 'must prove by a preponderance of the evidence that ... [Colgate] had a discriminatory motive or intent.' " *Thomas v. International Business Machines,* 48 F.3d at 484 (quoting *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991)). Myers need not show that her age or sex was "the sole motivating factor in the employment decision;" she need show only that her age or sex "was also a reason for the employer's decision and that it was the factor that made a difference." *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir. 1995) (quotations omitted). In other words, Myers must show that Colgate would not have terminated her but for the age or sex discrimination. *James v. Sears, Roebuck and Co., Inc.,* 21 F.3d 989, 992 (10th Cir.1994). At the same time, absent evidence of an unlawful discriminatory motive, the federal acts do not become a vehicle for evaluating the propriety or sec-

ond-guessing the employer's judgment in a business decision. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426–27 (10th Cir.1993).

■ "The framework for assessing the evidence in an age discrimination case parallels that applicable in a Title VII case." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1153 (10th Cir.1990); *see Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1315 (10th Cir.1999). Here, plaintiff offers no evidence that Colgate made any comments directed to her age or sex, or any direct evidence of age or sex discrimination. Although direct or indirect evidence may be used to prove employment discrimination, in practice, plaintiffs typically offer only circumstantial proof because "there is rarely direct evidence of discrimination." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir.1994). In analyzing ADEA and Title VII cases where circumstantial evidence is used, as here, the court relies on the burden shifting procedures set out in the Title VII case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Bullington*, 186 F.3d at 1315.

■ Under *McDonnell*, a plaintiff must first establish a prima facie case that the employer engaged in the alleged discriminatory practice. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). To establish a prima facie case of age discrimination under the ADEA, a plaintiff who is discharged in a RIF must prove that (1) she is within the protected age group, (2) she was doing satisfactory work, (3) she was discharged despite the adequacy of her work, and (4) there is some evidence the employer intended to discriminate against her in reaching its RIF decision. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir.), *cert. denied*, 525 U.S. 1054, 119 S.Ct. 617, 142 L.Ed.2d 556 (1998). *See Ingels*, 42 F.3d at 621. The fourth element is satisfied if the plaintiff "held a similar position to a younger retained employee." Id. at 1167. Proof of a prima facie case creates " 'a rebuttable presumption of discriminatory intent.' "

*Ingels*, 42 F.3d at 621 (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988)).

Of the four elements on her termination claim, the only one that the defendant contests is the fourth. Plaintiff contends that the fourth element was eliminated by the United States Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996), in which the Court stated:

> The discrimination prohibited by the ADEA is discrimination 'because of (an) individual's age,' (citation omitted) though the prohibition is 'limited to individuals who are at least 40 years of age.' (Citation omitted.) This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age.

517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d at 438. Plaintiff reads the above language to mean that "discrimination is discrimination and needs not be contrasted with other employees that are in or out (of) the protected class." (Dk. 58, p. 26.) Instead, a review of the *O'Connor* case reveals that the issue the Court was addressing was whether a person could establish a prima facie case of age discrimination when the person replacing him or her was within the protected age group. The Court held that the younger employee need not be outside the ADEA-protected class, *See O'Connor*, 517 U.S. at 308, 116 S.Ct. 1307, but the younger employee cannot be insignificantly younger because evidence that such an employee was retained would be insufficient to create an inference of illegal discrimination. *Id.* For purposes of convenience, this Court refers to "younger" employees where it means "not insignificantly

younger" employees. *O'Connor's* holding that in certain cases, a prima facie case can be made even when the younger replacement is also within the protected class, has no application to the facts of this case. Here, Myers makes no allegation that she was replaced by anyone after her termination.

The standards applicable to the fourth element of a prima facie case of discrimination in the context of a RIF are not fully defined. *See Beaird*, 145 F.3d at 1166. Although "evidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent," *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988), questions such as "whether a single younger employee retained in a similar position is sufficient to establish the fourth element, or how similar a position must be in order to be relevant under Branson," remain unanswered. *Beaird*, 145 F.3d at 1166. See *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137–38 (10th Cir.2000); *Krause v. Dresser Indus. Inc.*, 910 F.2d 674, 677 (10th Cir.1990) (holding prima facie case established where employer fired fifty-two year old accountant pursuant to RIF, but retained one younger employee in similar position).

"To make a comparison demonstrating discrimination, the plaintiff must show that the employees were similarly situated." *Cone*, 14 F.3d at 532. Therefore, in order for Myers to establish a prima facie case of age discrimination, she must establish that Colgate retained or placed a younger employees in a similar position. Similarly, for Myers to make a prima facie case of sex discrimination, she must establish that Colgate retained or placed a male employee in a similar position.[1]

■ Myers makes no such showing. Instead, she recognizes that there was no position similar to hers in the Q.A. depart-ment, and contends that she should have been permitted, based on her seniority and job performance, to displace less senior employees whose positions she was qualified to do. Myers concedes, however, that Colgate's policy prohibited this practice, referred to as "bumping," and the court finds nothing discriminatory about either the existence or the application of the policy here. Myers was a good and valuable employee to Colgate, but this fact neither requires Colgate to make an exception to its RIF policy, nor demonstrates that plaintiff was treated less favorably than similarly situated male or younger employees, as is plaintiff's burden.

■ ■ Myers additionally disputes the fact that her position was eliminated because she believes that at least some of her responsibilities as reliability engineer were still performed after her termination. However, "the test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position." *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 986–87 (10th Cir.1996) (finding this test not met where plaintiff's former responsibilities were divided up and absorbed by a four-person rotation of existing employees, and no new person took over plaintiff's former responsibilities.)

Here, the evidence, viewed in the light most favorable to Myers, shows that some of her former responsibilities as reliability engineer were eliminated, others were divided up and absorbed by several persons who were then current employees at the Kansas City plant, and yet others were performed by employees in other Colgate plants. Myers does not dispute the fact that no one person took over her position as reliability engineer after her termination, and does not allege that a new employee was added to the Quality Assur-

---

**1.** Colgate errs in asserting that a prima facie case is defeated by its showing that Schulz, a comparator to plaintiff, was also terminated in the same RIF. The fact that a younger male was terminated in the RIF does not preclude plaintiff from making her case by showing that a younger male was retained or hired in a similar position.

ance department after her termination. No similar position to the reliability engineer position held by Myers existed in the Quality Assurance department after Myers' termination in 1995. Under these circumstances, plaintiff has not shown that she was treated less favorably than significantly younger or male employees in the decision to terminate her employment. Myers has failed to make a prima facie case of age discrimination regarding her termination from employment, and has failed to make a prima facie case of sex discrimination regarding the same..

■ But even if plaintiff had made a prima facie case, the defendant has met its burden to show a legitimate, nondiscriminatory reason for her termination. A defendant who can rebut the presumption created by the prima facie case by asserting a "legitimate, nondiscriminatory reason for the employee's [treatment]." *Ingels,* 42 F.3d at 621. "[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion." *E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312, 1316 (10th Cir.1992) (citations omitted). The defendant's reason for discharge, however, "must be reasonably specific and clear." Id.

Colgate has consistently stated to plaintiff and this court that its reason for plaintiff's termination is because of a reduction in force ("RIF") in which it sought to eliminate certain positions to cut costs of the manufacturing plant. Plaintiff does not challenge the fact that a RIF in fact occurred at the time of her termination, or that she was told that her termination was pursuant to Colgate's reduction in force. Colgate's articulated reason is facially non-discriminatory, and is reasonably specific and clear.

■ Once the employer produces a legitimate nondiscriminatory reason for the adverse employment actions, then the presumption of discrimination created by the

prima facie case " 'simply drops out of the picture.' " *Ingels,* 42 F.3d at 621 (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)). It thus becomes "the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief.' " *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 327 (10th Cir.1996) (quoting *Randle v. City of Aurora,* 69 F.3d at 451), *cert. denied,* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). "While '[t]his burden is not onerous ... it is also not empty or perfunctory.' " *Hardy v. S.F. Phosphates Ltd. Co.,* 185 F.3d 1076, 1080 (10th Cir.1999) (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323–24 (10th Cir.1997) (internal citations omitted)). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence...." *Morgan,* 108 F.3d at 1323 (internal quotations omitted).

■ Evidence of pretext includes, but is not limited to, the following: "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms v. Oklahoma ex rel. Dept. of Mental Health,* 165 F.3d at 1328. Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. *Morgan,* 108 F.3d at 1323. "If no facts relating to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate." *Hooks v. Diamond Crystal Specialty Foods, Inc.,* 997 F.2d 793, 798 (10th Cir.1993), overruled in part on other grounds, *Buchanan v. Sherrill,* 51 F.3d 227, 229 (10th Cir.1995).

**1218**

■ In a RIF case, a plaintiff can demonstrate pretext in three principal ways. *Beaird,* 145 F.3d at 1168. First, she can argue that her own termination does not accord with the RIF criteria supposedly employed. Here, no showing is made that Colgate deviated from its RIF formula, or that Myers would have been retained had the employer's RIF formula been followed. This kind of evidence can in some cases suffice to substantiate pretext. *See Christie v. Foremost Ins. Co.,* 785 F.2d 584, 586–87 (7th Cir.1986) (holding that defendant's failure to comply with its own RIF policy allowed jury to conclude RIF was pretextual). But minor inconsistencies in the application of RIF criteria may be too insubstantial to allow a reasonable jury to infer that the RIF was pretextual. *See Lucas v. Dover Corp.,* 857 F.2d 1397, 1402 (10th Cir.1988). Myers makes no allegation that her termination violated Colgate's RIF policy, but instead alleges that no restructuring was necessary, or that some other employee should have had his position eliminated. Judgments such as these are not, however, for this court to make, and the court will not second-guess the employer's judgment in a business decision. *See Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1426–27 (10th Cir.1993).

Second, a plaintiff can adduce evidence that her evaluation under the defendant's RIF criteria was deliberately falsified or manipulated so as to effect her termination or otherwise adversely alter her employment status. *See, e.g., Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992) ("To make progress, the plaintiffs had to come up with evidence implying that the performance evaluations had been 'cooked' in order to do in the older workers."). The only claim of this kind arguably made by Myers is that when her position as Q.A. supervisor was eliminated in 1994, her "firing was planned from the start and the move to reliability engineer a feeble attempt to isolate (her) in a position (Colgate) could later justify eliminating." (Dk. 58, Exh. 1, p. 5). Plaintiff's suspicions are not supported by the record. The record reveals that the reliability engineering position was intended to be a permanent, full time position, and does not support any inference that Colgate knew in 1994 when it transferred Myers to the reliability engineer position, that the position would not be needed one year later.

■ Third, a plaintiff can "adduce evidence that the RIF is more generally pretextual. For instance, a plaintiff may establish that an employer actively sought to replace a number of RIF-terminated employees with new hires." *Beaird,* 145 F.3d at 1168. Myers makes no showing of any new hires in the Q.A. department. Instead, Myers presents the following allegations in an effort to show Colgate's stated reasons are pretextual: (1) statistics show that the majority of employees terminated in 1994 and 1995 were over the age of 40, and that the number of employees remaining at the Kansas City plant over the age of 40 diminished in 1994 and again in 1995; (2) Jacquelyn Miller, another female over 40, was terminated due to alleged restructuring, but Colgate placed an advertisement in the paper seeking someone to fill her same position within a week thereafter, and hired a replacement for her; (3) Dennis Fletcher, another Q.A. employee whose position was eliminated in 1995, was permitted to "bump" older employees with greater seniority than he had. These contentions will be addressed in turn.

### Statistics

■ Myers has produced statistical evidence purportedly showing a correlation between age and discharge. While statistical evidence may create an inference of discrimination, the evidence may be so flawed as to render it insufficient to raise a jury question. *Fallis v. Kerr–McGee Corp.,* 944 F.2d 743, 746 (10th Cir.1991) "A plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." *Cone,* 14 F.3d at 532 (quot-

ing *Fallis,* 944 F.2d at 746). Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext. *Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1456 (10th Cir.1994). *Furr,* 82 F.3d at 986–87.

The court does not believe Myers' proof is sufficient to make on her age or sex discrimination claims. In this case, Plaintiffs' statistical evidence is flawed because it fails to compare similarly situated individuals, and takes into account persons terminated by decision-makers other than the one who made the decision to terminate Myers. Plaintiffs' statistics group all employees together regardless of their specialty or skill and fail to take into account nondiscriminatory reasons for the numerical disparities, such as employees who may have voluntarily accepted layoff or other retirement packages that enhanced their benefits. Based upon the dictates of the cases noted above, no inference of pretext arises from plaintiff's statistical evidence.

### Miller's Termination

Myers has provided evidence that another senior female employee, not in the Q.A. department, was terminated the same summer Myers was, and received a letter identical to the one Colgate sent Myers, indicating that her termination was due to restructuring. (Dk. 58, Exhs. 2 & 3). Myers has also produced a newspaper advertisement dated only five days after the letter notifying Miller of her termination, which Myers alleges is Colgate's ad to fill Miller's position. Based upon this evidence, Myers contends that Colgate's "restructuring" is pretextual, and a mere guise for terminating and replacing older female employees with new hires.

Myer's evidence contains no testimony from Miller or others about the circumstances surrounding her termination, and fails to show that the advertisement in the newspaper, which contains only a Box number and makes no mention of Colgate, was placed by Colgate. Additionally, Colgate has presented evidence that the decision to terminate Miller was based upon her performance, that Miller's position was not eliminated, and that the "restructuring" letter was sent for the purpose of enabling Miller to receive certain benefits upon termination. (Dk. 59, Exh. B. p. 150). The court also finds it significant that Miller's termination occurred approximately six weeks after Myers', and that Myers and Miller worked in different departments. Given the record before the court, no evidence of pretext is shown by the fact that a female in another department was terminated for performance reasons six months after Myers, but received a termination letter identical to the one received by Myers.

### Bumping

Myers concedes that Colgate's policy or practice precluded salaried employees from "bumping" less senior employees, (Dk. 58, p. 4), but contends that salaried employees were permitted to bump more senior employees. In support of this assertion, Myers states in her affidavit that in 1995 when Dennis Fletcher's position as a process engineer was eliminated, he bumped two older employees who had greater seniority with the company. Colgate alleges in response that its policy is age-neutral, and that of the two employees allegedly "bumped" by Fletcher, one was terminated based upon performance criteria, and the other voluntarily accepted layoff in order to receive greater severance benefits. Neither Myers' allegations, nor Colgate's response, is supported by citation to the facts essential to a determination of whether Fletcher actually "bumped" anyone. Without proof as to the reasons for or the circumstances surrounding the vacancies created by the departures of the two employees allegedly bumped by Fletcher, the court does not credit either Myers' allegations or Colgate's response. Furthermore, the mere allegation of bumping by less senior employees does not create a material issue of fact regarding plaintiff's discrimination claims.

The court is persuaded that no rational factfinder could base a finding of pretext on any of the above assertions, and finds them to be unrelated events, inconsequential facts and opinions, or attenuated inferences. The ADEA does not require an employer to give special treatment to older workers to the disadvantage of junior employees; it requires only that older workers be treated fairly. *See Jones v. Unisys Corp.*, 54 F.3d 624, 630 n. 6 (10th Cir.1995). The evidence overwhelmingly supports the defendant's proffered reasons for the plaintiff's termination, and the plaintiff's meager evidence is insufficient to create a genuine issue of material fact as to pretext. *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997)(holding that the mere existence of a scintilla of evidence is insufficient to create a dispute of fact that is genuine.) Accordingly, the court finds summary judgment appropriate on plaintiff's age and sex discrimination claims arising from her termination from employment in June of 1995.

### Non–Termination Claims

Although no pretrial order has yet been filed in this case, the parties have represented to the court on or about March 12, 1997, in their joint proposed pretrial order, that the only questions of fact remaining in this case involve Myers' termination from employment in June of 1995. The court takes the parties at their word, and finds that no other claims are stated in this case.[2]

However, plaintiff's factual contentions in that proposed pretrial order, and in its briefing of this summary judgment motion, could be read to encompass various additional claims, namely: (1) retaliation, (2) disparate treatment based upon sex or age in Myers' 1994 demotion from Q.A. supervisor to reliability engineer, and (3) hostile work environment based upon sex. Even assuming that any such claims are proper-

ly before the court, summary judgment is granted on such claims based upon the following: (1) On October 13, 1996 the Magistrate Judge ruled that no claim for retaliation was stated in this case. No amended complaint has been filed adding any retaliation claim, and no appeal of or objection to that magistrate's order has been made. (2) Although Myers did not like being transferred from Q.A. supervisor to reliability engineer in 1994, she retained the same seniority, grade, and salary in the latter position as she had enjoyed in the former, and no evidence is presented to support any inference that the transfer was the objective equivalent of a demotion. (Dk. 58, Exh. 5, p. 123).[3] Under the facts presented, no showing of any adverse terms or conditions has been made. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir.1998) (holding that a mere inconvenience or an alteration of job responsibilities is not an adverse employment action). (3) Myers has made no showing of severe and pervasive acts which would be offensive to a reasonable person or woman, as is required to make a prima facie case of hostile work environment sexual harassment. *See Harris v. Forklift, Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (requiring that the conduct be severe or pervasive enough to create an objectively hostile or abusive work environment and that the victim perceive it as such). Accordingly, summary judgment will be entered in favor of the defendant on each of plaintiff's claims of age and/or sex discrimination.

### II. OBJECTION TO MAGISTRATES'S ORDER

On April 24, 1997, Magistrate Newman denied plaintiff's Motion to Compel certain discovery, denied plaintiff's Motion for an Extension of Time in which to file a Motion to Compel, and imposed sanctions

---

**2.** The court does not presume that it has jurisdiction over any claims other than the termination claim, and the record fails to reveal whether plaintiff has included any other claims in her administrative complaint,

and/or exhausted her administrative remedies regarding any such claims.

**3.** The same is true for plaintiff's earlier transfer to a secretarial position.

upon plaintiff's counsel. Sanctions were based upon the Magistrate's finding that the plaintiff failed to comply with the requirements of Fed.R.Civ.P. 37(a)(2)(B) and D. Kan. Rule 37.2. Specifically, the Order found that the Certificate of Compliance that plaintiff's attorney filed in support of his Motion to Compel was "either wilfully false or recklessly made without regard to its truthfulness." (Dk. 48, p. 9). Plaintiff now objects to the Magistrate's Order. Plaintiff's request for oral argument of this issue is denied as unnecessary.

### Standard of Review

As to nondispositive pretrial matters, the district court reviews the magistrate judge's order under a clearly erroneous or contrary to the law standard. 28 U.S.C. § 636(b)(1)(A); *Continental Bank, N.A. v. Caton,* 136 F.R.D. 691, 693 (D.Kan. 1991). "The clearly erroneous standard requires the district court to affirm the magistrate judge's order unless it has the definite and firm conviction from all the evidence that error has occurred." (citations omitted). *Id.*

The conference requirements imposed by the Federal Rules of Civil Procedure and Rules of Practice of the United States District Court for the District of Kansas encourage resolving discovery disputes without judicial involvement. Before filing a motion to compel, the movant must make reasonable efforts to confer. The issue here is not whether plaintiff's counsel undertook reasonable efforts to confer in good faith with defendant's counsel, *C.f. Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 456, 459 (D.Kan. 1999), but whether the magistrate's determination that plaintiff's counsel made affirmative misrepresentations to him about those efforts to confer, is clearly erroneous.

Here, the plaintiff's attorney conceded to the Magistrate that the Certificate was inaccurate, and that although it represented that he had conferred in person with defense counsel regarding the discovery disputes only six days before signing the certificate which accompanied plaintiff's

Motion to Compel, he had not conferred in person with defense counsel on that date or at any time after he had received the defendant's responses to plaintiff's discovery. (Dk. 48, p. 5–7). This was despite the fact that plaintiff's counsel had conducted depositions with defendant's counsel the day after he received defendant's responses to plaintiff's discovery. (Id.) Counsel for plaintiff also conceded to the magistrate that the only telephone call in which discovery disputes were addressed occurred before he received the discovery responses, despite the representation to the contrary in his Certificate. (Id.) Additionally, counsel for plaintiff failed to attempt to remedy the unfortunate situation at his first opportunity to do so, but instead attempted to persuade the magistrate that the certificate was accurate. Only when he was repeatedly confronted with the facts, did plaintiff's counsel finally admit that the challenged contacts did not occur. (Dk. 48, p. 8).

Plaintiff's current objection (Dk. 51) does not dispute the facts stated above, but only submits that "the judicial process ought not to be a mine field fraught with minute technicalities and traps ready to derail the process of substantive justice" (Dk. 51, p. 2), and that defendant's Motion for Sanctions did not comply with the requirements of Fed. R. Civ. P. 11. (Dk. 57). This latter objection is immaterial, as sanctions were imposed by the magistrate on its own initiative pursuant to Rule 37 and its local counterpart, and not pursuant to Fed. R. Civ. P. 11., *see* Fed. R. Civ. P. 11(d), noting its inapplicability to discovery matters, or in response to any motion filed by the defendant. (See Dk. 48, p. 9–10). The magistrate fully complied with the procedures designed to provide a party with an opportunity to show cause why he should not be sanctioned. See D. Kan. R. 11.1(a)(1)(providing that the court, upon its own initiative, may issue an order to show cause why sanctions should not be imposed against a party and/or an attorney for violation of the rules). Additionally, the

magistrate fully articulated the factual and legal bases for its decision.

■ The primary purpose of Rule 37 sanctions is to deter future abuse of discovery. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). Local Rule 37.2 was developed with the intention of promoting judicial economy while at the same time reducing litigant's expenses in the form of attorney fees for time spent in briefing issues and in preparing and presenting pleadings. One purpose of this rule is to protect the court from unnecessary work on motions that would not have to be filed if the parties were communicating with each other. Local Rule 37.2 imposes a substantial professional obligation on counsel for the parties to resolve discovery problems before bringing them to the court. Counsel for the plaintiff has failed to meet that obligation in this instance.

■ The court has reviewed the documents giving rise to the discovery dispute, the Magistrate's order regarding the discovery issues and the parties' briefs on this matter, and finds no error in the Magistrate's determination that given the unique facts and circumstances of this case set forth above, sanctions are warranted. Plaintiff's representations to the court were neither mere technical violations of the rules, nor merely inadvertent errors.

Although the magistrate determined that sanctions were warranted, he did not impose any sanction, likely due to the fact that plaintiff's counsel quickly sought review of the magistrate's decision. Given the fact that the magistrate who found plaintiff's conduct to be sanctionable is now deceased, and no court has greater familiarity with this matter than does this court, this court will, in the interest of judicial efficiency, determine what sanction to impose. Rule 37(b), Federal Rules of Civil Procedure, permits the imposition of a variety of sanctions following a party's failure to cooperate in discovery. It is well settled that the imposition of sanctions, as well as the choice of an appropriate sanc-

tion, is a matter committed to the sound discretion of the court. The court's discretion is limited in that Fed.R.Civ.P. 37 requires that any sanction be "just" and that the sanction be specifically related to the particular "claim" which was at issue in the order to provide discovery. See Fed. R.Civ.P. 37(b)(2). *See also Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 102 S.Ct. 2099, 2107, 72 L.Ed.2d 492 (1982). Similarly, under D. Kan. R. 11.1(c), the imposition of sanctions for violation of a local rule or order is discretionary with the court. In considering the imposition of sanctions, the court may consider whether a party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate. D. Kan. R. 11.1(c).

Considering the facts recited above, the court finds that a monetary sanction is appropriate. The plaintiff's attorney is hereby ordered to pay to defendant's counsel defendant's reasonable expenses, including attorney's fees, caused by plaintiff's failure to file an accurate certificate of compliance accompanying his Motion to Compel. In the event the parties are unable to agree on the amount of those expenses, counsel for the defendant shall submit its motion in support of its expenses, accompanied by affidavits, expense vouchers, records of billed hours, and/or other evidentiary matters, to this court on or before the 2nd of June, 2000, and plaintiff shall have until June 16, 2000, to respond thereto. Oral argument on defendant's motion for expenses shall be heard on July 7, 2000, at 11:00 a.m.

For the reasons set forth above, plaintiff's objection to the Magistrate's order of April 24, 1997 is denied, and the Magistrate's Order of April 24, 1997 (Dk. 48) is affirmed in its entirety, as all other matters addressed therein are moot.

### III. DEFENDANT'S MOTION FOR DETERMINATION OF PLACE OF TRIAL

Defendant has filed a motion to designate Kansas City, Kansas as the place of

trial in this case. For the reasons stated above regarding the court's ruling on the summary judgment motion, this motion is denied as moot.

## IV. MOTION TO DISMISS
### Rule 12(b)(6) Standards

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.,* 944 F.2d 752, 753 (10th Cir.1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief.") (citations omitted). The Tenth Circuit has observed that the federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Maez v. Mountain States Tel. and Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)). A court judges the sufficiency of the complaint accepting as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), and drawing all reasonable inferences from those facts in favor of the plaintiff. *Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir.), *cert. denied,* 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998); *see Southern Disposal, Inc. v. Texas Waste Management,* 161 F.3d 1259, 1262 (10th Cir.1998) (court "need not accept … conclusory allegations as true."). It is not the court's function "to weigh potential evidence that the parties might present at trial." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

A 12(b)(6) motion must be converted to a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court." Fed.R.Civ.P. 12(b). In the present case, the Complaints, attached to Colgate's motion to dismiss, are themselves pleadings, and the court has not considered matters outside the pleading, which would trigger conversion of the motion to a summary judgment motion.

### ERISA—Claim Splitting

Myers alleges that Colgate violated § 510 of ERISA, which prohibits interference with protected rights under the statute. 29 U.S.C. § 1140. That statute provides:

"It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan… or for the purpose of interfering

with the attainment of any right to which such participant may become entitled under the plan . . ."

Specifically, plaintiff contends that she was "deprived of her retirement and pension benefits from defendant" as a result of her termination of employment from Colgate, (Dk. 21, Exh. 1, Count I, para. 11), and that her termination "was intentional and as part of defendant's pattern and practice of firing employees in order to deprive them of their retirement benefits on the pretext of company restructuring." (Id., para.18.) Colgate has filed a separate motion to dismiss Myers' ERISA case, alleging that it constitutes improper claim-splitting, and is barred by the applicable statute of limitations.

Myers contends that claim splitting only prevents a plaintiff who has failed in an earlier claim from filing a related claim, and has no application to a situation such as this in which different suits are currently pending before the court. Myers also contends that her ERISA claim arises out of a "totally different set of facts" (Dk. 22, p. 4) yet the only such fact alleged is that discovery in the ADEA and Title VII case "revealed that defendant was also interested in firing plaintiff because of the cost of her benefits." (Id.)

The court agrees that the ERISA case is barred by the rule against claim splitting. This rule prohibits a plaintiff from prosecuting its case piecemeal, *United States v. Haytian Republic*, 154 U.S. 118, 125, 14 S.Ct. 992, 38 L.Ed. 930 (1894), and requires that all claims arising out of a single wrong be presented in one action. *See Oxbow Energy, Inc. v. Koch Industries, Inc.*, 686 F.Supp. 278, 282 (D.Kan.1988); *Wright v. Brotherhood Bank & Trust Co.*, 14 Kan.App.2d 71, 782 P.2d 70 (1989).

Here, plaintiff's age and sex discrimination case and her ERISA case arise out of the same transactional nucleus of facts, and would involve substantially the same evidence. Both complaints allege wrongs arising from the fact of her termination from employment, and both cases challenge Colgate's stated reasons for termi-nation. Resolution of both cases would turn on the same primary issue, namely, what the defendant's real reason was for terminating the plaintiff. Under these circumstances, it is immaterial whether the two cases seek identical relief, or would both be tried to a jury.

Permitting plaintiff to pursue her ERISA claims would frustrate the policies underlying the res judicata doctrine, put the parties to the cost and vexation of multiple lawsuits, deplete judicial resources, foster inconsistent decisions, and diminish reliance on judicial decisions. Plaintiff had an opportunity to amend her ADEA/Title VII complaint to add ERISA or other claims, but failed to do so. She cannot now seek to remedy this defect by bringing another suit naming the identical plaintiff, the identical defendant, and identical operative facts.

## ERISA § 510 Statute of Limitations

Even if plaintiff's ERISA case were not barred by the rule against claim-splitting, it would be barred by the applicable statute of limitations. Congress did not provide a statute of limitations for claims premised upon § 510 of ERISA. When Congress fails to provide a statute of limitations for claims arising under federal statutes, the courts generally turn to the most analogous state statute of limitations. *See DelCostello v. International Bd. of Teamsters*, 462 U.S. 151, 158–60, 103 S.Ct. 2281, 2287–89, 76 L.Ed.2d 476 (1983).

In selecting the state statute of limitations most appropriate to the federal cause of action, federal courts must first "characterize the essence of the claim in the pending case." *Wilson v. Garcia*, 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). Characterization of the essential nature of an ERISA action is a matter of federal law. Id. In *Held v. Manufacturers Hanover Leasing Corporation*, 912 F.2d 1197 (10th Cir.1990), the Tenth Circuit held that ERISA claims brought pursuant to § 510 for intentional

interference with protected rights were most analogous (under then existing New York law) to claims for employment discrimination, *id.* at 1204–05, while ERISA claims for damages and benefits were most analogous to breach of contract claims, for purposes of statutes of limitations. *Id.* at 1206. However, neither the Tenth Circuit nor the District Courts for the District of Kansas has characterized ERISA § 510 claims under Kansas law.

■■■ The circuit courts that have considered claims similar to Myers' have almost unanimously concluded that the most analogous state-law cause of action under § 510 is "wrongful termination" or "retaliatory discharge," catchall descriptions of state-law causes of action encompassing an employee's claim that he was discharged in violation of public policy. *See Teumer v. General Motors,* 34 F.3d 542, 549–50 (7th Cir.1994) (retaliatory discharge encompassing interference "with the exercise of favored rights."); *Burrey v. Pacific Gas & Elec. Co.,* 159 F.3d 388, 397 (9th Cir.1998) (holding that the one-year statute of limitations for a tort action for wrongful termination in violation of public policy applied to the plaintiffs' ERISA § 510 claim); *Byrd v. MacPapers, Inc.,* 961 F.2d 157, 159 (11th Cir.1992) (discharge in retaliation for filing workers' compensation claim); *Felton v. Unisource Corp.,* 940 F.2d 503, 510–13 (9th Cir.1991)(wrongful termination in violation of public policy, such as discharge "for exercising a legal right."); *McClure v. Zoecon, Inc.,* 936 F.2d 777, 778–79 (5th Cir.1991)(wrongful discharge and employment discrimination); *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1137 (7th Cir.1992) (statute of limitations applicable to claims for retaliatory discharge applied to § 510 ERISA claim). *But see Gavalik v. Continental Can Co.,* 812 F.2d 834, 846–47 (3d Cir.1987) (race-based employment discrimination).

In Kansas, retaliatory discharge claims are governed by the two-year statute of limitation found in K.S.A. § 60–513(a)(4). *Marquardt v. Miles, Inc.,* No. 93–2153–JWL, 1994 WL 171698, at *5 (D.Kan. Apr.14, 1994) (citing *Johnston v. Farmers Alliance Mut. Ins. Co.,* 218 Kan. 543, 546–47, 545 P.2d 312 (1976)), *aff'd,* 68 F.3d 483 (10th Cir.1995). Similarly, the Tenth Circuit has consistently held that the appropriate limitations period in Kansas for a § 1983 action is the two-year period established for actions for "injury to the rights of another" contained in § 60–513(a)(4). *See Baker v. Board of Regents,* 991 F.2d 628, 630 (10th Cir.1993). The court finds Myers' ERISA claim under § 510 analogous to either a § 1983 action or a retaliatory discharge claim, both of which are governed by a two-year statute.

■■■ Plaintiff's claim was filed within two years of the date of her termination, but more than two years after she learned that she would be terminated on a specific date. Accordingly, the court must determine when plaintiff's ERISA claim accrued. Even when relying on an analogous state statute of limitations, federal courts look to federal common law for purposes of deciphering the accrual date of a cause of action under a federal statute. *See Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

■■■ In employment discrimination cases, the injury arises when the adverse employment action is communicated to the plaintiff, not when the ill effects of the decision are felt by the plaintiff. *Delaware State College v. Ricks,* 449 U.S. 250, 260, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Accrual is not delayed until the employee's discovery of the alleged unlawful nature of the decision. *Id.; Cf. Marquardt,* 1994 WL 171698, at *5 (holding retaliatory discharge claim accrues on the date plaintiff receives notice of termination) (citing *Johnston,* 218 Kan. at 548, 545 P.2d 312). Although the Tenth Circuit has not addressed the issue, the Seventh Circuit has held that ERISA § 510 causes of action accrue when the termination decision is communicated to the plaintiff, not when the plaintiff is terminated or learns that

her benefits are denied. *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129 (7th Cir.1992). The court finds this reasoning persuasive.

Here, plaintiff has admitted in her pleadings that "on June 15, 1995, [she] received notice that her employment was being terminated effective June 22, 1995." (Dk. 21, Exh. 3, p. 2). Her cause of action for ERISA § 510 thus accrued on June 15, 1995. Her ERISA complaint was not filed until June 20, 1997, more than two years thereafter, and is thus barred by the statute of limitations. Colgate's Motion to Dismiss is therefore granted on this alternative, independent ground.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 54) in case no. 96–4095–SAC is granted and defendant's Motion for Determination of Place of Trial (Dk. 29) in that same case is denied as moot;

IT IS FURTHER ORDERED that the plaintiffs' objections (Dk. 51) to the magistrate judge's April 24, 1997 memorandum and order in case no. 96–4095–SAC are overruled, and the magistrate judge's April 24,1997, order (Dk. 48) is affirmed. The plaintiff's attorney is hereby ordered to pay to defendant's counsel defendant's reasonable expenses, including attorney's fees, caused by plaintiff's failure to file an accurate certificate of compliance accompanying his Motion to Compel. In the event the parties are unable to agree on the amount of those expenses, counsel for the defendant shall submit its motion in support of its expenses, accompanied by affidavits, expense vouchers, records of billed hours, and/or other evidentiary matters, to this court on or before the 2nd of June, 2000, and plaintiff shall have until June 16, 2000, to respond thereto. Oral argument on defendant's motion for expenses shall be heard on July 7, 2000, at 11:00

IT IS FURTHER ORDERED that the defendant's motion to dismiss (Dk. 19) in case no. 97–4122 is granted.